UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION No. 2:22-cv-127 |
| OF DIAMOND B. INDUSTRIES, LLC, AS | * | SECTION "R" (4) |
| OWNER AND OPERATOR OF THE M/V | * | |
| RIVER DIAMOND FOR EXONERATION | * | JUDGE SARAH S. VANCE |
| FROM AND/OR LIMITATION OF | * | |
| LIABILITY | * | MAGISTRIATE JUDGE ROBY |

**CLAIMANT RIDGE GUIDRY'S MEMORANDUM IN RESPONSE IN OPPOSITION TO DIAMOND B. INDUSTRIES, L.L.C.'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

CLAIMANT RIDGE GUIDRY ("Claimant" or "Guidry"), submits this Memorandum in support of his Response to Diamond B. INDUSTRIES L.L.C.'s ("Diamond B") Motion for Summary Judgment (Doc. 47) and would respectfully show the Court the following:

**I.**

**SUMMARY**

The Court should deny Diamond B's motion for summary judgment because:

- Diamond B provided tug services for Rigid's TIDEMAR barge on the day of the incident;

- Diamond B personnel knew the condition of the spud and that it had been repaired prior to the incident. Diamond B also knew that there was a crack in the spud immediately prior to the incident;

- Diamond B's captain also ran the barge up on the rocks causing the spud to sway back and forth. It was at this time that the spud broke in half and hit Claimant Guidry in the head;

- As such, there exists a genuine issue of material fact pertaining to Diamond B's liability in this matter;

1

## II.

### PROCEDURAL HISTORY

This personal injury action is necessary because of the injuries that Claimant Ridge Guidry sustained on September 8, 2021. Shortly thereafter, Claimant Ridge Guidry initiated a state court action in West Baton Rouge Parish against Diamond B and Rigid Constructors, LLC ("Rigid") claiming Jones Act negligence, unseaworthiness of the vessel, and general maritime negligence. Separately, Claimant Guidry filed another state court action in Iberville Parish against CBF Welding, Inc. ("CBF"). Both state court actions have been stayed. Following the filing of the West Baton Rouge Parish state court action, Diamond B and Rigid initiated separate limitations actions in the Eastern District of Louisiana. Claimant Guidry filed claims in both limitation actions. The two limitation proceedings were then consolidated by this Court into one. (Doc. 47). Diamond B and Rigid filed claims against each other, as well as against CBF. Diamond B also asserted a 14(c) tender against Rigid, and Rigid made a third-party demand/14(c) tender against CBF. The Court granted Claimant Guidry's motion to bifurcate the matter, and trial on issues of liability, limitation, and apportionment of fault will be tried to this Court on March 20, 2023. (Doc. 36). Diamond B has now filed a summary judgment asking the Court to dismiss all claims against Diamond B. Diamond B further requests, in the alternative, to limit Diamond B's potential liability to the value of the M/V RIVER DIAMOND and its pending freight and, in the further alternative, dismiss all claims for punitive damages against Diamond B.

## III.

### SUMMARY JUDGMENT EVIDENCE

Claimant relies on the following evidence in his Opposition to Summary Judgment:

Exhibit A:     Deposition of Ridge Guidry

Exhibit B:      Deposition of Captain Donald Taylor

Exhibit C:      Deposition of Mike Schedxnayder

Exhibit D:      Deposition of Robert Peterson

Exhibit E:      CBF Invoices

Exhibit F:      Deposition of Zack Ackels

Exhibit G:      Deposition of Ronnie Dougget

## IV.

### FACTS

On September 8, 2021, Claimant Guidry sustained severe injuries to his head and other parts of his body when a spud on a spud barge broke in half, striking him on the head. Rigid is a marine construction company, and at the time of the incident, had contracted with Iberville Parish Counsel to rebuild rock jetties along the bank of the Port Allen Canal. For this job, Rigid had verbally contracted with Diamond B, for Diamond B to provide its tugboat services to maneuver Rigid's TIDEMAR barge and the material barge that was tied up to the TIDEMAR barge. Rigid maintained a crew on the TIDEMAR barge and Diamond B maintained a crew on the tugboat, the M/V RIVER DIAMOND, throughout the entirety of the project.[1] Rigid and Diamond B's crews worked hand in hand with each other maneuvering the barge into position for the work to be performed. Rigid and Diamond B's crews are on the same radio channel, and Diamond B's crew goes on the barge and operates the spuds themselves when Rigid's crew is not there[2]. At the time of the incident, Guidry was employed by Rigid as a deckhand, and Guidry was working aboard the TIDEMAR barge. The TIDEMAR has two spuds on it that go up and down and act as anchors

---

[1]      Exhibit G at 19:6 – 23.
[2]      Exhibit A at 77:24 – 78:05; Exhibit G at 82:7 – 12.

3

for the barge as the work is being performed. The spud at issue had been welded and repaired by CBF at least eleven times prior to it breaking in half and striking Guidry on his head.[3] The most recent repair by CBF occurred on August 31, 2021 – roughly seven days before the incident. *Id.* Specifically, when making the repairs on August 31st, CBF's welder, Riley Tallent-Gary, instructed everyone that the repairs he was making on the spuds were temporary and the spud needed to be fully replaced. *Id.* Diamond B was aware that these repairs were occurring. However, the spud needing to be replaced was nothing new as many witnesses have testified that it was well known the condition of the spud was in working condition and it needed to be replaced well before the incident.[4]

On the morning of the incident, work was being performed roughly 100-200 feet upriver from where the incident occurred[5]. Once that was complete, one of Rigid's employees, Mr. Peterson, lifted the spuds up to move to a different location. Once it was lifted, Peterson noticed yet another crack in the spud. Mr. Peterson let Rigid personnel know over the radio about the crack and the decision was made to proceed with the work despite the crack. Diamond B was also on the same channel and was told about the crack in the spud.[6] As the barge and the tug was making it to the new location, the tugboat drifted the barge into the bank. The barge made contact with the bank and made the barge be at a 3:1 angle. The operator of the excavator aboard the TIDEMAR testified that it was Diamond B's Captain's error as to why the barge made contact with the bank.[7] At the same time Diamond B's captain made a navigational error and banked the barge against the rocks, the spud broke in half and fell, striking Guidry directly on his head.

---

[3] *See* Exhibit E
[4] Exhibit D at 73:22 – 74:02.
[5] Exhibit B at 62:9 –63:5; 65:3-9.
[6] Exhibit D at 74:16 – 20.
[7] Exhibit C at 37:12 – 18.

## V.

### SUMMARY JUDGMENT STANDARD

Summary judgment can be granted only if there is no genuine dispute as to any material fact.[8] "This requirement is to be strictly construed so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial."[9] When determining whether genuine issues of material fact exist, a court should construe "all justifiable inferences in favor of the nonmovant."[10] A fact is material if it "might affect the outcome of the suit under governing law."[11] "An issue is 'genuine' if the evidence could allow a reasonable jury to return a verdict for the nonmovant."[12]

## VI.

### DIAMOND B'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

1. **Diamond B breached its duties to Guidry under general maritime negligence.**

Even though Diamond B is not Claimant Guidry's employer, and Guidry was not a member of the crew on the Tugboat, Diamond B still has duties under independent maritime Jones Act negligence and owes a warranty of seaworthiness to all members aboard the TIDEMAR, including Claimant Guidry. Despite Diamond B's contention to the contrary, Diamond B did have duties

---

[8] Fed. R. Civ. P. 56(c).
[9] *Jackson Tool & Die, Inc. v. Smith*, 339 F.2d 88, 91 (5th Cir. 1964).
[10] *Sanchez Oil & Gas Corporation v. Crescent Drilling & Production, Inc.*, 7 F.4th 301, 308-09 (5th Cir. 2021).
[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[12] *Sanchez Oil*, 7 F.4th at 309 (*citing TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)).

under general maritime negligence, and there exists genuine issues of material fact as its relates to Diamond B's actions while providing tugboat services to Rigid[13].

To establish maritime negligence, a plaintiff must demonstrate the following: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury sustained by the plaintiff; and (4) a causal connection between the defendant's conduct and the plaintiff's injury. GIC Servs., L.L.C. v. Freightplus USA, Inc., 866 F.3d 649, 659 (5th Cir. 2017). The element of causation requires evidence the negligence was "a substantial factor" in the injury, although "[t]he term 'substantial factor' means more than 'but for the negligence, the harm would not have resulted.' Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992) (internal quotations omitted). In addition, the foreseeability of the damages can affect the proximate-cause determination. See In re Signal Int'l, LLC, 579 F.3d 478, 490 n. 12 (5th Cir. 2009).

Diamond B's motion focuses on the assertion that Diamond B did not have a duty, that Diamond B did not breach any duty, and that there is no proximate cause between any actions of Diamond B and the injuries sustained by Claimant Guidry. There exist genuine issues of material fact to each one, however.

Whether Diamond B owed a legal duty to Guidry "is a question of law"[14]. Rigid contracted with Diamond B for Diamond B to provide tugboat services for this ongoing job. As such, Diamond B had a duty to carry out their navigational component of the job in a reasonable manner.

---

[13] See Stevens v. East-West Towing Co., 649 F.2d 1104, 1109-1110 (5th Cir. 1981), cert den. sub nom., East-West Towing Co. v. Avondale Shipyards, Inc., 454 U.S. 1145 (1982); and Sea-Land Serv. v. Crescent Towing & Salvage Co., 42 F.3d 960, 961-963 (5th Cir. 1995) (finding no error in attributing fault to both the tug and the vessel in its tow: "A tug can be liable to a seaman aboard the vessel being towed where the seaman is injured due to the tug's premature attempt to tow the vessel."). The court in Sea-Land assessed the tug (Crescent Towing & Salvage Co.) with 65% of the fault and the owner of the vessel under tow, Sea-Land Serv., with 35% of the fault for injuries sustained by a crewman aboard a vessel being towed by Crescent's tug.
[14] Canal Barge Co. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000) (citations omitted)

Furthermore, a duty can arise upon a tug for the unseaworthiness of a tow if the tug has notice of the unseaworthiness. Here, there is evidence that Diamond B knew of the repairs done on the spuds prior to the incident, and there is evidence that Diamond B was aware of the crack in the spud immediately prior to the spud breaking in half.[15] As such, Diamond B owed a duty to the Claimant Guidry.

Diamond B also breached its duties and its breaches were the proximate cause of Claimant's Guidry's injuries. Diamond B's captain made a navigational error and drove the barge into the rocks.[16] At the same time the barge made contact with the rocks, the spud broke in half. As such, Captain's Taylor failure of losing control of the tow, contributed to the break of the spud. Additionally, Captain Taylor testified that cracks in the spud made a barge unseaworthy.[17] Captain Taylor further testified that he would exercise his stop work authority if there was a crack in the spud.[18] Despite Diamond B crewmembers being aware of the crack in the spud immediately prior to the incident, no stop work was given by anyone from Diamond B.

In sum, given the evidence, there exists genuine issues of material fact as to whether Diamond B's captain used reasonable and ordinary care and skill in the performance of work as a prudent navigator would do under the circumstances.[19] Additionally, there exists genuine issues of materials fact as to whether Diamond B's crew members exercised reasonable care in exercising in operating the tow with the spud in its current condition. As such, the Court should deny Diamond B's motion.

---

[15] Exhibit A at 87:10 – 19; 174: 7 – 24
[16] Exhibit C at 37:12 – 18.
[17] Exhibit B 77 6 – 8
[18] Exhibit B at 147 15 – 20.
[19] *Stevens v. The White City*, 285 U.S. 195, 202, 52 S. Ct. 347, 350, 76 L. Ed. 699, 703 (1932); *Derby Company v. A. L. Mechling Barge Lines, Inc.*, 258 F. Supp. 206, [**9] 211 (E.D. La. 1966), aff'd, 399 F.2d 304 (5th Cir. 1984).

## VII.

### CONCLUSION

For these reasons, Claimant respectfully requests that the Court deny Diamond B's Motion for Summary Judgment.

**DATED: January 30, 2023.**

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/ Trent Shelton*
Trent Shelton, Roll # 39765
tshelton@arnolditkin.com
Roland Christensen, Roll #37440
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Tel: 713.222.3800
Fax: 713.222.3850
**e-service@arnolditkin.com**

**COUNSEL FOR CLAIMANT RIDGE GUIDRY**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 30th day of January 2023, by e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

*/s/ Trent Shelton*