UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN THE MATTER OF THE COMPLAINT OF DIAMOND B. INDUSTRIES, LLC, AS OWNER AND OPERATOR OF THE M/V RIVER DIAMOND FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 22-127<br>c/w 22-574<br><br>SECTION "R" (4) |
| --- | --- |

## ORDER AND REASONS

Before the court is the motion for summary judgment of petitioner Diamond B. Industries, LLC ("Diamond").[1]  Claimant Ridge Guidry, petitioner Rigid Constructors, LLC ("Rigid"), and third-party defendant CBF Welding, Inc. ("CBF") oppose the motion.[2]  For the following reasons, the Court grants Diamond's motion in part and denies it in part.

## I.   BACKGROUND

Based on the undisputed facts in the record, this case arises from an accident on the Mississippi River, which occurred on September 8, 2021.  Ridge Guidry, the sole personal-injury claimant, was employed

---

[1]    R. Doc. 47
[2]    R. Docs. 52, 56 & 60.

by Rigid, a maritime construction company.[3]   Guidry worked as a deckhand aboard the TIDEMAR, a construction barge owned by Rigid.[4]  He was injured when a steel shaft, or "spud," cracked and fell on him.[5]  At the time, the TIDEMAR was performing construction work repairing a jetty on the riverbank in Iberville Parish.[6]  The job involved laying rocks and fabric along the riverbank.[7]  There were two spuds on the TIDEMAR that were utilized to keep the barge in place at different times during the project.[8]  They were lowered into the river as a means of keeping the vessel stationery, and they were raised whenever the vessel was moved.[9]  As the TIDEMAR was used as a work platform and did not have a means of self-propulsion, Rigid engaged Diamond to provide tug services to move the barge from site to site on the project.[10]

---

[3]    R. Doc. 1 ¶ 10.
[4]    *Id.*
[5]    *Id.*
[6]    R. Doc. 47-2 at 1 (Diamond's Statement of Uncontested Material Facts ¶ 3).
[7]    *Id.* (Diamond's Statement of Uncontested Material Facts ¶ 4).
[8]    *Id.* at 2 (Diamond's Statement of Uncontested Material Facts ¶ 9).
[9]    *Id.* at 2 (Diamond's Statement of Uncontested Material Facts ¶ 14).
[10]    R. Doc. 47-2 at 3 (Diamond's Statement of Uncontested Material Facts ¶ 20).

Rigid instructed Diamond's tugboat, the M/V RIVER DIAMOND, when and where to move the TIDEMAR.[11]

On August 31, 2021, one of the spuds required repair.[12]  Rigid temporarily halted the work and asked CBF to repair the spud.[13]  Riley Tallent-Gary,  the welder for CBF who worked on the spud, testified that the spud at issue had required repair multiple times in the past.[14] He also testified that previous repairs were performed on the same area of the spud where the crack giving rise to this case formed.[15]  CBF performed the welding work on the spud, and—although disputed by Rigid—Tallent-Gary testified that he told multiple Rigid employees onsite, including Guidry, that the spud was a hazard and would require more permanent repairs.[16]  Tallent-Gary testified that he warned the deckhands not to stand near the spud because "it might fall and kill someone."[17]  Guidry later testified that he knew the spud was not "safe to use" after the August 31 repair.[18]

---

[11]    R. Doc. 47-7 at 18 (Deposition of Mike Schexnayder at 76:7-10).
[12]    R. Doc. 67-3 at 3 (Deposition of Zachary Ackal at 48:9-16).
[13]    *Id.*
[14]    R. Doc. 47-17 at 11 (Deposition of Riley Tallent-Gary at 86:7-19).
[15]    *Id.*
[16]    *Id.* at 8 (Deposition of Riley Tallent-Gary at 76:1-10).
[17]    *Id.*
[18]    R. Doc. 47-5 at 9 (Deposition of Ridge Guidry at 176:9-25).

The facts surrounding the morning of September 8, 2021 are in dispute.  It is not disputed that Robert Peterson, a Rigid deckhand, saw a crack in the recently repaired spud on the morning of the accident.[19] As is relevant to this motion, the parties dispute what Donald Taylor, the captain of the M/V RIVER DIAMOND, knew about the condition of the spud before undertaking to move the TIDEMAR to the site of the accident.  But is not disputed that either immediately after the M/V RIVER DIAMOND moved the TIDEMAR, or while the barge was in the process of being moved, the spud cracked and fell on Guidry.[20] The parties further dispute whether Captain Taylor navigated the barge in tow in a negligent manner such that the recently repaired spud collapsed and injured Guidry.

Following the incident, Guidry filed a personal injury action in state court against Rigid and Diamond B Marine Services, Inc. (presumably a mistake, as Diamond B. Industries, LLC is the owner of the M/V RIVER DIAMOND).[21]  In response, Diamond and Rigid each filed actions for limitation of liability,[22] which were later consolidated

---

[19]    R. Doc. 60-6 at 32-33, 70-71 (Deposition of Robert Peterson at 30:17-31:1, 69:13-70:19).

[20]    R. Doc. 47-1 at 8.

[21]    *See id.* at 4 ¶ 15.

[22]    *See* R. Doc. 1 (Case No. 22-127); R. Doc. 1 (Case No. 22-574).

before this Court.[23]   The Court entered a restraining order in each action, enjoining proceedings outside this one.[24]   Guidry responded to both complaints for limitation in a timely manner and re-asserted his claims.   CBF was sued by both limitation petitioners and subsequently asserted its own claims for indemnity and contribution against Rigid and Diamond.   This Court then bifurcated the consolidated action, ordering that liability and limitation be tried in a bench trial, while reserving Guidry's right to try personal-injury damages in state court after the limitation proceeding concludes.[25]

Now, Diamond seeks summary judgment on its claims of exoneration and limitation of liability.[26]   Guidry, Rigid, and CBF oppose the motion.[27]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

---

[23]   *See* R. Doc. 31.
[24]   *See* R. Doc. 3 (Case No. 22-127); R. Doc. 4 (Case No. 22-574).
[25]   R. Doc. 36.
[26]   R. Doc. 8.
[27]   R. Docs. 16 & 17.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); see also *Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

## III.  DISCUSSION

### A.    Jones Act Claims Against Diamond

Guidry asserts multiple Jones Act claims against Diamond.  "A seaman may bring suit under the Jones Act only against his

6

employers." *Scarborough v. Clemco Indus.*, 391 F.3d 660, 667 (5th Cir. 2004). And, "a third person who borrows a worker may become his employer if the borrowing employer assumes enough control over the worker." *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)). Here, it is not disputed that Guidry was not formally employed by Diamond. But in Guidry's state-court complaint, he alleged that he was a borrowed employee of Diamond. Whether an individual is a borrowed employee is a "matter of law" determined by making "nine separate factual inquiries":

> 1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
> 2. Whose work is being performed?
>
> 3. Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?
>
> 4. Did the employee acquiesce in the new work situation?
>
> 5. Did the original employer terminate his relationship with the employee?
>
> 6. Who furnished tools and place for performance?
>
> 7. Was the new employment over a considerable length of time?
>
> 8. Who had the right to discharge the employee?

9. Who had the obligation to pay the employee?

*Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988) (citing *Ruiz*, 413 F.2d at 310); *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 676 (5th Cir. 1993). No single factor or set of factors is determinative in establishing a "borrowed employee" relationship. *Brown*, 984 F.2d at 676. The central factor is that of control. *Id.*; *Melancon*, 834 F.2d at 1244–45 (same); *Ruiz*, 413 F.2d at 312 (same). The party asserting the existence of a borrowed employee relationship bears the burden of proof. *Franks v. Assoc'd Air Center, Inc.*, 663 F.2d 583, 587 (5th Cir. 1981).

The Court need not engage in extensive analysis here because no party opposing summary judgment has pointed to any evidence suggesting that Guidry was a borrowed employee of Diamond. Indeed, the parties do not contest Diamond's assertions on this issue, and nothing in the record indicates that *Diamond* exerted any control over Guidry or his work. Accordingly, Diamond's motion is granted as to the Jones Act claims against it.

**B.   *Sieracki* Seaworthiness Claim**

8

Further, Diamond moves to dismiss any *Sieracki* seaworthiness claim that Guidry alleges.  To the extent Guidry has asserted an unseaworthiness claim based on *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), that claim is dismissed.  It is not disputed that Guidry is a Jones Act seaman, that he was employed by Rigid at the time of the accident, and that he was not a crew member of the M/V RIVER DIAMOND.[28]  Indeed, no party has opposed this portion of Diamond's motion.  Guidry therefore cannot assert a *Sieracki* seaworthiness claim against Diamond.  *See Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312, 315 (5th Cir. 1990) (holding that "a Jones Act seaman, who possesses the full range of traditional seamen's rights and remedies, cannot maintain a *Sieracki* seaworthiness action against a vessel on which he is not a crew member").  Diamond's motion is granted as to Guidry's *Siearcki* seaworthiness claim.

### C.   General Maritime Negligence

The elements of a maritime negligence claim are essentially "the same as land-based negligence under the common law."  *Withhart v.*

---

[28]   R. Doc. 47-2 at 1 (Diamond's Statement of Uncontested Material Facts ¶ 1-2).

*Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). To sustain a claim for maritime negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (internal quotations and modifications omitted). Diamond moves for summary judgment based on the contentions that it did not breach any duty owed to Guidry, and if it did, its actions were not the cause of Guidry's injury.

### 1.    *Duty and Breach*

"Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). "The determination of the existence and scope of a duty involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Id.* (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)) (internal quotations omitted). A duty may

be owed "only with respect to the interest that is foreseeably jeopardized by the negligent conduct." *Id.* A breach of the duty of ordinary care can be found when defendant acts negligently, *i.e.*, without such care. *See, e.g.*, *Movible Offshore, Inc. v. M/V Wilken A. Falgout*, 471 F.2d 268, 274 (5th Cir. 1973) ("It is enough that the vessel sought to be charged had at its disposal safe means to avoid the collision and negligently failed to do so." (emphasis in original)). In general, a tug owner, such as Diamond, is not responsible for accidents that occur because of the unseaworthiness of its tow. *See Zurich Ins. Co. v. Crosby Tugs, L.L.C.*, 46 F. App'x 732 (5th Cir. 2002); *see also Ryan Walsh Stevedoring Co. v. James Marine Service*, 557 F. Supp. 457, 460 (E.D. La. 1983), *aff'd*, 729 F.2d 1457 (5th Cir. 1984); *In re Tug Beverly, Inc.*, No. 92-99, 1994 WL 194891, at *1 (E.D. Pa. May 13, 1994). Indeed, when a contract is made to tow a vessel, the owner of the tow warrants the seaworthiness of his vessel, and the owner of the tug is responsible for its safe navigation. *See Houma Well Serv., Inc. v. Tug Capt. O'Brien*, 312 F. Supp. 257, 259 (E.D. La. 1970); *see also* 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 12:5 (6th ed. 2020). But a tug may owe a duty of care to its tow if "it had actual knowledge of the tow's unseaworthiness or the unseaworthiness was

so apparent that it would be negligent to proceed with the tow." *Zurich*, 46 F. App'x at 732 (citing *King Fisher Marine Serv., Inc. v. The NP Sunbonnet*, 724 F.2d 1181, 1184 (5th Cir. 1984)).

Diamond contends that it is entitled to summary judgment because there is no evidence that it owed a duty with respect to Guidry, that it breached any duty owed, or that it caused the underlying accident. First, Diamond contends that it did not owe Guidry a duty of care because it had no knowledge of the crack in the spud prior to moving the TIDEMAR, nor did it have knowledge of the spud's previous damage and repairs.[29] The issue of whether Diamond knew about the spud's condition or whether it was apparent turns on the state of knowledge of Captain Taylor, the only Diamond crew member identified by the non-movants. Diamond is correct that there is no evidence that Captain Taylor or other Diamond employees were *directly* informed that the spud had previously been damaged and repaired, or that a crack had formed on the spud on the morning of the accident. But the non-movants have nonetheless created an issue of fact on whether Taylor was aware of the dangerous condition of the spud on the morning of the accident—which, if true, should have

---

[29]    R. Doc. 47-1 at 15.

prevented the M/V RIVER DIAMOND from moving the TIDEMAR. *Zurich*, 46 F. App'x at 732.

In opposing Diamond's motion, the non-movants point to evidence that the crews of the M/V RIVER DIAMOND and the TIDEMAR had access to, and utilized, a common radio channel.[30] Indeed, Captain Taylor admitted that the radio was used to communicate with the TIDEMAR crew,[31] and that he overheard radio discussions concerning the dangerous condition of the spud immediately after the accident occurred.[32] Guidry and CBF also point to Robert Peterson's testimony that he noticed a crack on the spud on the morning of the accident.[33] Peterson also testified that he informed Mike Schexnayder, the operator of the excavator aboard the TIDEMAR, about the crack.[34] Lastly, Peterson testified that he heard Schexnayder issue a warning over the common radio channel that the

---

[30] R. Doc. 60-6 at 70-71 (Deposition of Robert Peterson at 69:13-70:19); R. Doc. 60-3 at 45 (Deposition of Ridge Guidry at 174:15-175:7).

[31] R. Doc. 60-4 at 20, 21 (Deposition of Donald Taylor at 76:7-14, 79:20-24).

[32] *Id.*

[33] R. Doc. 60-6 at 32-33, 70-71 (Deposition of Robert Peterson at 30:17-31:1, 69:13-70:19).

[34] *Id.*

13

spud had cracked.[35]  Guidry also points to Captain Taylor's statement made to Guidry after the accident that Taylor "had a feeling something was going to happen with that spud."[36]   Lastly, Guidry points to evidence that Taylor admitted he would have exercised his stop work authority if he knew about the crack in the spud.[37]  This evidence, taken together, precludes summary judgment.  Taylor's admission that he "had a feeling something was going to happen" to the spud is indicative that he had knowledge of the spud's dangerous condition before the accident, which could give rise to a duty to protect against the risks posed by the spud.  Further, the circumstantial evidence regarding Taylor's regular use of the common radio channel and the information conveyed on that channel adds to this conclusion. There is also an issue of fact regarding whether Taylor breached his duty by moving the TIDEMAR immediately before the accident and not exercising stop work authority. Taylor's acknowledgement that he would have stopped work if he had known about the spud's condition reflects his awareness of the action that would have been required of him.

---

[35]   R. Doc. 60-6 at 32-33, 70-71 (Deposition of Robert Peterson at 30:17-31:1, 69:13-70:19).

[36]   R. Doc. 60-3 at 45 (Deposition of Ridge Guidry at 174:15-175:7).

[37]   R. Doc. 60 at 7; *see also* R. Doc. 60-4 at 21 (Deposition of Donald Taylor 78:18-79:2).

### 2. *Causation*

The non-movants have also created a material fact issue on causation. In maritime negligence cases, the purported negligence must be the proximate, or legal, cause of the damage, which is something more than "but for" causation—"the negligence must be a substantial factor in causing the injuries." *In re Great Lakes*, 624 F.3d at 213–14 (citation and quotations omitted); *see Dixie Marine, Inc. v. Q Jake M/V*, No. 16-12415, 2017 WL 3600574, at \*10 (E.D. La. Aug. 22, 2017). The non-moving parties have created a fact issue on causation by pointing to Taylor's testimony that he would have exercised stop work authority if he knew about the spud's dangerous condition. Evidence of Taylor's knowledge plus evidence that he could have stopped the work create an issue of fact as to whether Taylor could have prevented the accident if he had not breached a duty of care. Accordingly, Diamond's motion is denied as to Guidry's general maritime negligence claim.

### D. Limitation of Liability

Lastly, Diamond moves for summary judgment on its claim for limitation of liability on the basis that it had no "privity or knowledge" of the alleged negligent acts or unseaworthy conditions that caused the accident.[38] A vessel owner who seeks limitation must show that it lacked privity or knowledge of the negligence. *Kristie Leigh Enterprises, Inc., v. American Commercial Lines*, Inc., 72 F.3d 479, 481 (5th Cir. 1996). The Fifth Circuit has explained that "privity or knowledge, which is sometimes described as 'complicity in the fault,' extends beyond actual knowledge to knowledge that the ship owner would have obtained by reasonable investigation." *Cupit v. McClanahan Contractors, Inc.*, 1 F.3d 346, 348 (5th Cir. 1993). When the limitation plaintiff is a corporation, "privity or knowledge" means the privity or knowledge of its officers as well as high-level managers in the corporate hierarchy. *See Cont'l Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1377 n.16 (5th Cir. 1983) ("Whether a corporation has 'privity or knowledge' of a negligent act may be determined on the basis of whether the negligent employee is sufficiently high in the corporate hierarchy to make his awareness that of the corporation." (citing

---

[38] R. Doc. 47-1 at 19-20.

*Spencer Kellogg & Sons v. Hicks*, 285 U.S. 502 (1932))); *see also
Brister v. A.W.I., Inc.*, 946 F.2d 350, 356 (5th Cir. 1991) (explaining
that a corporate shipowner is entitled to limitation if it overcomes the
"presumption[s] . . . that" (1) "its officers and managers had actual
knowledge," and (2) "that they should have known of the unseaworthy
or negligent condition that caused the injury"); 2 Thomas J.
Schoenbaum, Admiralty & Maritime Law § 15:8 (6th ed. 2020).

As the moving party with the burden of proof on this issue, to be
entitled to summary judgment, Diamond must put forth evidence
which, if uncontroverted at trial, could result in a judgment on partial
findings in its favor. *Cf. Pro. Managers, Inc. v. Fawer, Brian, Hardy
& Zatzkis*, 799 F.2d 218, 223 (5th Cir. 1986) (explaining that while the
standard for summary judgment ordinarily mirrors the standard for
directed verdict under Federal Rule of Civil Procedure 50(a), "in
nonjury cases it mirrors the standards . . . provided by Rule [52(c)]."); 
*see also* Fed. R. Civ. P. 56(a) (requiring that a movant makes a showing
"that it entitled to judgment as a matter of law."). Here, Diamond
points to a lack of evidence that it was directly informed of the spud's
condition or that the spud had recently been repaired.   As noted in
Section III.C, *supra*, the non-moving parties have created a fact issue

on Taylor's knowledge regarding the spud's condition.  The issue of privity or knowledge thus turns on whether Taylor is a sufficiently high-ranking employee of Diamond that the Court may impute the Captain's knowledge on Diamond.  The non-moving parties allude to 46 U.S.C. § 30506, which provides that "the privity or knowledge of the master [of a vessel] . . . at or before the beginning of each voyage, is imputed to the owner."  But the statute is not applicable here, as it also states that:

> (a) Application.—
>
> *This section applies only to seagoing vessels*, but does not apply to pleasure yachts, *tugs, towboats, towing vessels*, tank vessels, fishing vessels, fish tender vessels, canal boats, scows, car floats, barges, lighters, or nondescript vessels.

*Id.* (emphasis added).  The relevant vessel in this case, the M/V RIVER DIAMOND, is an inland tugboat, rendering the imputation clause of the statute facially inapplicable.  *See Matter of Dredge Big Bear*, 525 F. Supp. 3d 731, 739 (M.D. La. 2021) (holding that imputation of privity or knowledge to owner based on what a captain knew is not warranted when the vessel was an inland tugboat and not a "seagoing vessel").  But this does not end the inquiry on whether Taylor is sufficiently high up in Diamond's corporate ladder.  *Cf. In re Hellenic Inc.*, 252 F.3d 391, 396 (5th Cir. 2001) (noting that "it is the

18

'extent of the employee's responsibility, not his title, that determines whether limitation is foreclosed." (quoting *Bonanza Corp.*, 706 F.2d at 1377 n.16)).  The Fifth Circuit has explained that:

> Although this determination is case-specific, courts have looked to a number of factors: (1) the scope of the agent's authority over day-to-day activity in the relevant field of operations; (2) the relative significance of this field of operations to the business of the corporation; (3) the agent's ability to hire or fire other employees; (4) his power to negotiate and enter into contracts on behalf of the company; (5) his authority to set prices; (6) the agent's authority over the payment of expenses; (7) whether the agent's salary is fixed or contingent; and (8) the duration of his authority (*i.e.*, full-time or restricted to a specific shift). These factors are non-exhaustive and merely indicate the array of considerations that are potentially relevant to the managing agent inquiry.

*In re Hellenic Inc.*, 252 F.3d 391, 396–97 (5th Cir. 2001) (citations omitted).

Diamond has put forth no evidence on any of these factors.  The non-moving parties have submitted evidence on the first factor by pointing to Taylor's admitted stop work authority, and his role as master of the M/V RIVER DIAMOND, the only Diamond tugboat identified with respect to the Iberville project.  Because Diamond bears the burden of showing it did not have privity or knowledge, *Kristie Leigh Enterprises*, 72 F.3d at 481, and it has failed to submit evidence that could, if uncontroverted at trial, result in a judgment on partial

19

findings, the Court must deny its motion for summary judgment on limitation.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Diamond's motion for summary judgment.  The Court GRANTS the motion as to the Jones Act and *Sieracki* seaworthiness claims, and those claims are hereby DISMISSED WITH PREJUDICE.  The Court DENIES the motion as to Guidry's general maritime negligence claim and Diamond's limitation claim.

New Orleans, Louisiana, this __22nd__ day of March, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE